Battle, J.
The bill of exceptions presents for consideration two questions, both of which are of great importance to the community, as well as to the prisoner. The first is, whether the wilful and malicious setting fire to the house of another, the burning of which is only a misdemeanor, will become a capital felony, if a dwelling-house or barn with grain in it, be thereby burnt, where such burning is the probable consequence of the first illegal act. Upon this question we concur in the opinion given in the Court below : that in such a case, the prisoner is guilty of the felonious burning of the dwelling-house or barn, upon the principle that he is to be held responsible for the natural and probable consequence of his first criminal act. In support of this proposition, the burning of one’s own dwelling-house with a malicious and unlaw-, ful intent, furnishes a strong argument from analogy. Such burning is, of itself, only a high misdemeanor; but if the dwellings of other persons be situated so near to the one burnt, that they take fire and are consumed, as an immediate and necessary consequence of the first illegal act, it will amount to a felony. See 2 East. PL Cr. 1030 and 1031, and the cases of Rex v. Probert and Rex v. Isaac, there cited.
The second question is, whether upon an indictment for the felonious burning of a barn with grain, or corn in it, the prisoner can be convicted, upon proof, that he burnt a crib with corn in it. He certainly cannot, unless a barn and crib mean, in law, the same thing, or the testimony shows that they are in fact the same. The bill of exceptions does not set forth any proof that they are the same, and we are unable to find any authority, in the law, which pronounces them to be the same. In "Webster’s Dictionary, a “barn” is said to be “a covered building for securing grain, hay, flax, and other productions of the earth.” It is a word known to the English law, and is mentioned in the statute 23rd Hen. 8, chap. 1, section 3, as a house, the wilful burning of which, while it has grain or corn in it, shall be a felony without the benefit of clergy. A crib, according to Webster, means, in the United States, “ a small building, raised on posts for storing Indian corn.” We are *356 not aware that it is now, or ever has been, used in that sense in England, and we have not, as yet, seen it used in any of the acts of our Assembly. From this, it seems that a barn and a crib, are houses of a different kind, and used, ordinarily, for different purposes, and we learn, unofficially, that they are so known throughout the greater part, if not the whole, of this State. The burning of a crib with corn in it, is, then, a different offence from the burning of a barn with corn in it, and a prisoner charged with the latter cannot be convicted, upon proof of his having committed the former. Indeed, the burning of a crib, though it may have grain or corn in it at the time, is not made a felony at all, and it will be for the Legislature to consider whether such a building should not,, under similar circumstances, have the protection which is now extended by the 2nd section of the 34th chapter of the Revised Code, to barns. This case may, possibly, also suggest to that honorable body, that the wilful and malicious burning of stables with the intent to consume and destroy the horses that may be in them, is an offense quite as flagrant, as, and much more cruel, than, the burning 'of either cribs or barns, no matter how much corn or grain they may contain.
The judgment must be reversed, and a certificate to that effect must be sent to the Court below in order that the prisoner may have a venire de novo.
Per Curiam,
Judgment reversed.